**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHI HEALTH, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 26 C 2954** |
| | ) | |
| HEALTH CARE SERVICE CORP., | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

PHI Health, LLC has sued Health Care Services Corporation for its failure to pay overdue payment awards issued under the federal No Suprises Act (NSA). PHI asserts claims under the NSA, the Federal Arbitration Act (FAA), the Employee Retirement Income Security Act (ERISA), and the Illinois Consumer Fraud and Deceptive Business Practices Act. HCSC has moved to dismiss PHI's complaint.

### Background

At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018).

HCSC operates Blue Cross Blue Shield (BCBS) entities and adjudicates health insurance claims on behalf of those entities. PHI provided air ambulance services to participants or beneficiaries of HCSC-operated health plans. These were "out-of-network" services, meaning that PHI was not a provider that had contracted with HCSC or the relevant health plans to perform the services. PHI alleges that it followed industry

standard billing for these transports.  HCSC sent PHI an Explanation of Benefits form setting forth initial underpayments for bills arising from twelve air ambulance transports. HCSC declined to pay the full amount PHI sought.

In 2022, Congress enacted the NSA to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network providers.  42 U.S.C. §§ 300gg-111, 300gg-112.  The NSA relieves patients of financial liability for surprise bills, and it created an IDR process for billing disputes between providers and insurers.  *Id.* § 300gg-111(c)(1)-(5).  The NSA requires a provider and insurer to first try to agree on a price for the services.  This is referred to as the open negotiation process.  If the open negotiation process fails, the provider has four days to initiate independent dispute resolution (IDR) proceedings.  After a provider initiates IDR proceedings, the U.S. Department of Health and Human Services (HHS) selects a certified independent dispute resolution entity (CIDRE) to arbitrate the dispute.

The amount due is decided via a "baseball-style" dispute resolution in which the provider and insurer each submit an offer, and the CIDRE selects one party's offer as the award.  The CIDRE must consider the insurer's "qualifying payment amount," a heavily regulated rate that reflects the "median of the contracted rates recognized by the plan or issuer . . . for the same or a similar item or service" offered in the same insurance market and geographic area.  *Id.* § 300gg-111(a)(3)(E)(i).  In the absence of a fraudulent claim or evidence of a misrepresentation of facts to the CIDRE, the IDR award "shall be binding upon the parties involved," and payment of the award "shall be made . . . not later than 30 days after the date on which such determination is made." *Id*. § 300gg-112(b)(5)(D).

Under 42 U.S.C. § 300gg-111(c)(5)(E), any IDR award is binding on the parties and is subject to judicial review only in circumstances described in section 10(a) of the FAA.  The four grounds upon which a district court may vacate the award are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

PHI turned to the dispute resolution process set forth in the NSA.  PHI timely initiated the open negotiation process, but the parties were ultimately unable to agree to a payment amount during the open negotiation period.  When open negotiations failed, PHI timely initiated IDR proceedings under the NSA.  As a result of the IDR process, the CIDRE entered awards that required HCSC to pay PHI certain amounts.  According to PHI, HCSC has not paid the IDR awards, nor has it sought vacatur, modification, or correction of any of the awards.

According to PHI, HCSC frequently does not comply with the statute's 30-day payment requirement.  PHI further contends that when claims for services are paid, HCSC provides low reimbursement—in other words, less than the industry standard amount—in the hope that providers will find the IDR process too burdensome or will fail in one of the numerous steps in the IDR process and/or miss one of the NSA's strict deadlines.  This,  PHI says, forces providers to go through the costly and burdensome

3

IDR process for every out-of-network transport they provide. And PHI says that when all of these steps to delay and deny have failed, and PHI finally has binding award determinations in its favor, HCSC simply ignores them.

Under the NSA, the HHS, the Department of Labor, and the Department of Treasury have the authority to enforce provider and payor non-compliance with the NSA's provisions. 42 U.S.C. § 300gg-134(b). This enforcement mechanism involves assessment of a $100 fine for each day of non-compliance. *Id.* § 300gg-134(b)(2). If an entity fails to pay an assessed fine, HHS must refer the matter to the Attorney General, who may seek to recover the amount due by filing an action in the appropriate federal district court. *Id.* § 300gg-134(b)(2)(F).

In this lawsuit, PHI seeks enforcement, or confirmation, of the IDR awards in its favor and against BCBS plans administered by HCSC. PHI asserts claims under the NSA (count 1), the Federal Arbitration Act (FAA) (count 2), Illinois Uniform Arbitration Act (IUAA) (count 3) and ERISA (count 5). PHI also seeks declaratory and injunctive relief related to these claims (count 4) and asserts a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (count 6). In the alternative, PHI's complaint includes a "motion to confirm" the awards.

HCSC has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

**Discussion**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports*, 910 F.3d at 299 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in

the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* In ruling on a Rule 12(b)(6) motion to dismiss, a court is limited to assessing the allegations in the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information subject to proper judicial notice. *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025).

## A.   No Surprises Act (Count 1)

HCSC argues that the NSA does not provide a private right of action to enforce or confirm IDR awards, for three reasons. First, the Act bars "judicial review" of IDR awards except in circumstances involving fraud, corruption, partiality, or other misconduct, none of which is alleged here. Second, the Act omits any terms authorizing private enforcement, despite including those terms in other statutes. Third, the Act establishes an administrative scheme of enforcement. PHI responds that HCSC's arguments would render IDR awards optional rather than mandatory. PHI argues that it does not seek judicial review of the decisions but instead seeks to enforce them. PHI also contends that the modest civil penalties that federal agencies can assess for violation of the NSA are not an effective enforcement scheme.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). A private right of action can be express or implied. *Chi. Tchrs. Union, Loc. 1 v. Educators for Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025). An express right of action is in a statute's text; an implied right of action is "judicially inferred." *Id.* To find an implied right of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at

286. There is a "strong presumption" against the creation of an implied right of action. *Chi. Tchrs. Union*, 159 F.4th at 530. Without congressional intent to create a cause of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286–87.

The NSA does not contain an express private right of action. The only appellate court and majority of district courts to address whether the NSA implies a private right of action (including two judges in this District) have held that that it does not. *Guardian Flight, LLC v. Health Care Servs. Corp.*, 140 F.4th 271 (5th Cir. 2025); *PHI Healthcare LLC v. Heath Care Servs. Corp.*, No. 25 C 12406, 2026 WL 1802985, *3 (N.D. Ill. June 23, 2026) (Kocoras, J.) (collecting cases); *SpecialtyCare Inc. v. Health Care Servs. Corp.*, No. 25 C 12935, 2026 WL 1556442 (N.D. Ill. June 2, 2026) (Shah, J.).

When addressing this issue, Judge Manish Shah noted that the NSA states that payment "shall" be made to providers, "which is 'rights-creating' language suggesting an implied right of action." *Id.* (citing *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020)). Judge Shah went on to explain, however, that this language alone was not sufficient to find an implied private right of action. *Id.* Instead, "Congress must intend to create a private remedy." *Id.* In Judge Shah's view, the fact that Congress created an enforcement mechanism for HHS to enforce the NSA is the "'most revealing' clue about Congress's intent and suggests that Congress did not intend to create a private remedy for providers." *Id.* Thus Judge Shah concluded that the text and structure of the NSA do not imply a private right of action. *Id.*

Judge Charles Kocoras agreed with Judge Shah's analysis. *PHI Healthcare*, 2026 WL 1802985, at *3–4. Judge Kocoras also noted that this result is supported by

6

Congress's decision to expressly choose "to permit petitions brought under Section 10 of the FAA, but not Section 9." *Id.* at *4. Section 9 of the FAA empowers courts to confirm or enforce arbitration awards. *Guardian Flight*, 140 F.4th at 276.

The Court must look to the statute and the legislative intent when considering whether a statute implies a private right of action. Although PHI is correct that the NSA provides that the awards "shall be binding upon the parties involved," this is not sufficient, alone, to create an implied right of action. 42 U.S.C. § 300gg-11(c)(5)(E)(i)(I); *see Chi. Tchrs. Union*, 159 F.4th at 530 ("Our court has recognized a strong presumption exists against the creation of such implied rights of action.").

Congress must also intend to create a private remedy before one may be judicially inferred. The creation of an enforcement mechanism other than a private judicial remedy is "[m]ost revealing of Congress's intent" in this regard. *Chi. Tchrs. Union*, 159 F.4th at 530. In the NSA, Congress empowered the Department of Health and Human Services, the Department of Labor, and the Department of Treasury with enforcement of the NSA. 42 U.S.C. § 300gg-22(b)(2). The agencies may assess penalties against insurers for failure to comply with the NSA. *Id.* Thus Congress chose a remedy that provides for enforcement of statutory obligations through penalties accessed by federal agencies, not a private right of action.

PHI takes issue with Congress's choice and argues it does not equate to a true enforcement mechanism. It is not a court's role, however, to step in and create a private right of action simply because private enforcement may provide a more effective remedy than the mechanism Congress chose. *See Aland v. United States Dep't of the Interior*, No. 23-2415, 2024 WL 2036115, at *2 (7th Cir. May 8, 2024) ("[W]hen Congress does

7

not impliedly or expressly confer a cause of action to enforce a statute, courts may not create one even if . . . doing so would be desirable as a policy matter.").

In support of its argument, PHI points to three decisions in which courts held that the NSA implies a private right of action. *Guardian Flight LLC v. Aetna,* 789 F. Supp. 3d 214 (D. Conn. 2025); *PHI Health, LLC v. Optimum Choice, Inc.*, 826 F. Supp. 3d 654 (D. Md. 2026); *Shareef Jandali Plastic Surgery LLC v. Cigna Health and Life Ins. Co.*, No. 25 C 1168, 2026 WL 2098149, *8–9 (D. Conn. July 21, 2026). Two more courts have enforced or confirmed NSA awards without discussion of whether the statute creates a private right of action. *Worldwide Aircraft Servs. Inc. v. Worldwide Ins. Servs., LLC*, No. 24 C 840, 2024 WL 4226799, *4 (M.D. Fla. Sept. 18, 2024); *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. 22 C 6614, 2023 WL 5815821 (D. N.J. Sept. 8, 2023). And one court has held that a private right of action is not required for judicial confirmation of an NSA award. *Agag v. Cigna Health and Life Ins. Co.,* No. 25 C 498, 2026 WL 1021213 (D. Conn. March 15, 2026)

In *Guardian Flight*, the court concluded that the NSA uses "rights-creating language." *Guardian Flight*, 789 F. Supp. 3d at 226. The court went on to reason that

> [b]y placing the "determination . . . shall be binding on the parties'" language in a clause immediately preceding the clause barring judicial review—and by locating the two provisions in a paragraph entitled "Effects of determination,"—Congress indicated that the judiciary would play a role in ensuring IDR awards were "binding," and sought only to clarify that courts should not undermine the substance or finality of these awards.

*Id.* at 228 (internal citation omitted). In the court's view, "[a]ny other interpretation would render IDR awards meaningless except . . . in the rare instance in which an award was challenged <u>un</u>successfully." *Id*. The court also noted that "[p]roviding a private right of action only in cases that fall under the exceptions in § 10(a) of the FAA would also

8

create strange asymmetries: in cases involving fraud, corruption, partiality, and other misconduct, courts could review and vacate IDR awards, or decline to vacate them, in which case they would have the same force as civil judgments." *Id.*

In *Agag*, the court based its decision that a private right of action was not required to confirm an NSA award on the premise that "[a] private right of action is only required when a party seeks to enforce *substantive* rights in federal court, or at least when the party seeks a determination of the merits of a particular claim." *Agag*, 2026 WL 1021213, at *9. Because the provider's motion to confirm asked the court to act "in a purely ministerial way and enter as a judgment an earlier binding determination," the court concluded that a private right of action was not necessary. *Id.* The court explained that the NSA's administrative enforcement scheme does not provide a provider with any right to be heard when an award remains unpaid. *Id.* The court also noted that it was "conceivable that a health insurance company could choose to pay the civil monetary penalty but not the IDR award, because a civil monetary penalty under the NSA is $100 per day, whereas an IDR award . . . can be many times that amount." *Id.* at *13 (internal citation omitted).

Most recently, in *Jandali*, the court found that the NSA implied a private right of action. *Jandali*, 2026 WL 2098149, at *8–9. The court relied on a similar analysis as in *Guardian Flight*. *Id.* The court also relied on its view that the "inadequate nominal government enforcement mechanism" does not preclude a private right of action. *Jandali*, 2026 WL 2098149, at *9.

The Court does not find these decisions persuasive. First, in the Court's view, finding that the NSA does not create a private right of action does not render IDR

9

awards meaningless.  As discussed, the NSA includes an enforcement mechanism that penalizes a provider who fails to pay an IDR award.  Even if this method of enforcement is not the most effective, it is the method that Congress chose.  Furthermore, PHI seeks to enforce a substantive right to payment of the NSA awards.  The Court cannot avoid the private right of action question by reframing enforcement or confirmation of the NSA awards as a purely ministerial task.

The Court thus concludes that the NSA does not create an implied private right of action or otherwise permit judicial confirmation of NSA awards.

**B.      Federal Arbitration Act (Count 2) and Illinois Uniform Arbitration Act (Count 3)**

PHI alternatively seeks to enforce the NSA awards through the FAA or the IUAA. HCSC argues that PHI cannot use the FAA or IUAA to confirm the NSA awards because the parties did not have a written agreement to arbitrate.

Section 9 of the FAA states that if the parties "in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," a party to the arbitration may apply to the court to confirm the award.  9 U.S.C. § 9.  The court must confirm the award unless the award is vacated, modified, or corrected as laid out in sections 10 and 11 of the Act.  *Id*.  The IUAA states, "Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award . . . ."  710 ILCS 5/11.

The FAA and IUAA require written arbitration agreements.  *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) ("Although [the FAA] requires arbitration agreements to be in writing, it does not require them to be signed.");

10

*Chi. Southshore & S. Bend R.R. v. N. Ind. Commuter Transp. Dist.*, 184 Ill. 2d 151, 155, 703 N.E.2d 7, 9 (1998) (The IUAA "provides that a *written* agreement to submit any existing or future controversy to arbitration is valid and enforceable.").

PHI does not argue that a written agreement exists. Instead, it argues that HCSC agreed to arbitrate by participating in the NSA dispute resolution process. Rejecting this argument, courts have uniformly held that a party cannot use the FAA to enforce an award entered pursuant to the NSA when the parties did not have a written agreement to arbitrate. *PHI Healthcare*, 2026 WL 1802985, at *4–5; *SpecialtyCare*, 2026 WL 1556442, at *3–4; *Agag*, 2026 WL 1021213, at *8–9. In the Court's view, PHI provides no good reason to depart from those decisions.

The Court concludes that PHI cannot state a claim under the FAA to enforce the NSA awards because no written agreement to arbitrate exists.

### C. Employee Retirement Income Security Act (Count 5)

#### 1. Standing

HCSC argues that PHI lacks standing to bring ERISA claims because the plan beneficiaries who allegedly assigned their rights to PHI have not sustained, and cannot sustain, any concrete injury based on HCSC's alleged non-payment or untimely payment of IDR payment determinations. PHI responds that it has standing because it "alleges a concrete injury-in-fact–HCSC's refusal to pay amounts owed–and that a favorable judgment will compel payment." Pl.'s Resp. at 23. It is undisputed that the patients who received air transport services from PHI signed agreements that assigned their insurance benefits to PHI.

"[I]n order to claim the interests of others, the litigants themselves still must have

suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Thole v. U. S. Bank N.A*., 590 U.S. 538, 543 (2020) (internal citations omitted). "[A]n assignment puts the assignee into the shoes of the assignor." *Milam v. Selene Fin., LP*, 163 F.4th 416, 420 (7th Cir. 2025). "An assignee cannot have greater rights than the assignor possessed[.]" *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir. 1993).

In *Guardian Flight,* the court found that a provider had standing to bring an ERISA claim—after assignment—because the claim was based on the insurance companies' "improper denial of payment and benefits" for out of network services. *Guardian Flight,* 789 F. Supp. 3d at 232. The court reasoned that "the patient-assignors were still owed these benefits under the plans for which they contracted" so "their denial remains a concrete injury." *Id.*

Judge Shah also addressed a similar question in *SpecialtyCare*. He held that the case did not present a question of standing but instead a question of whether the claim for payment fell within ERISA's "zone of interests." *SpecialtyCare*, 2026 WL 1556442, at *2. "The Supreme Court stressed in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the importance of keeping standing distinct from statutory coverage." *Penn. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015). Under ERISA, "[a] civil action may be brought by a participant or beneficiary [of an ERISA plan] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The question therefore is "whether plaintiffs are participants or beneficiaries as ERISA uses those

12

words—both of which are defined terms." *Penn. Chiropractic*, 802 F.3d at 328. A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The issue in this case is not whether PHI has standing to bring an ERISA claim but instead is whether PHI's claim falls within ERISA's "zone of interests." *SpecialtyCare*, 2026 WL 1556442, at *2–3. PHI alleges that patients have assigned it their benefits under the HCSC plans and thus it is a "beneficiary." But PHI is not asserting assigned claims while standing in the shoes of patients. Instead, PHI's claim is based on HCSC's alleged failure to pay IDR awards owed to PHI itself. The patients could not bring a claim to enforce the awards, and thus the patients have no claim to assign to PHI. The Court thus concludes that PHI cannot bring a claim to enforce the NSA awards under ERISA because the claim does not fall within the Act's zone of interests.

### 2. Failure to state a claim

HCSC also argues that PHI has not stated a viable claim under sections 502(a)(1)(B) or 502(a)(3) of ERISA. PHI contends that it has stated a claim under section 502(a)(1)(B) for underpayment of benefits. PHI also responds that its section 502(a)(3) claim is distinct from its section 502(a)(1) claim for payment. According to PHI, its section 502(a)(1) claim "seeks equitable relief to force compliance with the NSA provisions of ERISA and related regulations. In other words, PHI seeks an injunction compelling HCSC to pay IDR awards within 30 days of issuance." Pl.'s Resp. at 24-25.

Section 1132(a)(1)(B) states: "A civil action may be brought—(1) by a participant

13

or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This equitable relief "is available only when Congress did not provide relief elsewhere." *Griffin v. TeamCare*, 909 F.3d 842, 846 (7th Cir. 2018).

As discussed, PHI does not allege that it is a participant, beneficiary, or fiduciary under ERISA. This is a requirement to state a claim under section 1132(a)(1)(B) or 1132(a)(3) of ERISA. Thus the Court concludes that PHI has failed to state a claim under these provisions.

**D.     Illinois Consumer Fraud and Deceptive Business Practices Act (Count 6)**

HCSC argues that PHI cannot state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act because it is not a consumer and cannot satisfy the "consumer nexus" test. HCSC also argues that the failure to pay the NSA awards lacks any sufficient connection with Illinois. Finally, HCSC argues that PHI fails to allege facts that plausibly show a violation of the Act.

PHI concedes that it is not a consumer and thus recognizes that it can state an unfair conduct claim only if it alleges facts to establish standing under the "consumer

14

nexus" test.[1]  PHI argues that its allegations satisfy the "consumer nexus" test because it alleges that Illinois consumers purchase HCSC products with the expectation of compliance with federal law and that HCSC's refusal to pay binding IDR awards undermines the value of its products and threatens access to care.  PHI further contends that the claim is sufficiently connected to Illinois because it alleges that HCSC is headquartered in Illinois and directs its claims administration, payment processing, and payment policies from Illinois.  Finally, PHI responds that it has stated a claim because it alleges that HCSC maintains a pattern and practice of refusing to pay IDR awards which harms providers, restricts access to care, and undermines statutory protections.

A plaintiff who asserts an unfair conduct claim under the Illinois Consumer Fraud and Deceptive Practices Act must allege:  (1) a practice offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers.  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019).  A business may maintain a claim under the Consumer Fraud and Deceptive Practices Act only if "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns."  *Kim v. State Farm Mut. Auto. Ins. Co.*, 2021 IL App (1st) 200135, ¶ 46, 199 N.E.3d 737, 752.  A plaintiff must also sufficiently allege that "the  circumstances that relate to the disputed

---

[1] The Illinois Supreme Court addressed the "consumer nexus" test in the context of a deceptive practices claim. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶¶ 30–38, 241 N.E.3d 454, 463–66.  The court held that there is no "'consumer nexus' exemption that relieves a business plaintiff from alleging facts in support of the element of proximate cause."  *Id.* at ¶ 38, 241 N.E.3d at 465.  Because PHI asserts an unfair conduct claim as opposed to a deceptive practices claim, *Tri-Plex* does not impact the Court's analysis.

transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 853–54 (2005). "[T]here is no single formula or bright-line test for determining whether a transaction occurs within the state. Rather, each case must be decided on its own facts." *Id.*

Judge Kocoras recently rejected PHI's argument that similar allegations were sufficient to establish "a sufficient nexus to Illinois." *PHI Health*, 2026 WL 1802985, at *8. He based this on the fact that the services giving rise to the payment dispute were not rendered in Illinois and the individuals who received the services that ultimately led to the NSA awards were not Illinois residents. *Id.* Additionally, PHI did not allege that it dealt with any representatives of the defendant insurance company in Illinois or suffered damage in Illinois. *Id.* Instead, the "only reason Illinois is impacted is because BCBSTX is a division of a company headquartered in Illinois." *Id.* The court concluded this was insufficient, given the totality of PHI's allegations, to find that "the circumstances that relate to the disputed transaction occur[ed] primarily and substantially in Illinois." *Id.* (quoting *Robinson v. DeVry Educ. Grp., Inc.*, No. 16 C 7447, 2018 WL 828050, *4 (N.D. Ill. Feb. 12, 2018)).

Two of the NSA awards at issue in this case relate to services provided to participants of group health plans administered by Blue Cross Blue Shield of Illinois. HCSC noted at oral argument, however, that PHI does not provide services within Illinois. Thus, even though these individuals were covered by Illinois plans, the patients could not have been in Illinois when they received PHI's air ambulance services.

The fact that PHI does not render services in Illinois creates a larger problem for its Consumer Fraud and Deceptive Business Practices Act claim. PHI's primary

16

"consumer nexus" argument is that HCSC's refusal to pay IDR awards harms providers and restricts access to care.  At oral argument, PHI emphasized that consumers would be impacted by HCSC's refusal to pay IDR awards because, if it goes unpaid, PHI ultimately would go out of business and would no longer be available to provide services to consumers.  The problem, however, is that PHI does not allege or argue that it regularly provides services to *Illinois* consumers.  Without this information, any potential impact on Illinois consumers is remote and speculative.

PHI also argues that it adequately alleges conduct occurring substantially and primarily in Illinois because "HCSC is headquartered in Illinois and directs claims administration, payment processing, and payment policies from Illinois, including decisions regarding (non-)compliance with IDR awards."  Pl.'s Resp. at 26.  These contentions do not support PHI's claim because they do not relate to HCSC's conduct towards the market and consumers.

At oral argument, PHI pointed the Court to *Guardian Flight*, 789 F. Supp. 3d at 238, arguing that the court in that case concluded that the plaintiff stated a claim for unfair and deceptive practices.  This case provides no support for PHI's position, however, because the court did not address whether the plaintiff sufficiently alleged a nexus between the alleged conduct and Connecticut.

The Court concludes that PHI has not stated pled a viable claim under the Illinois Consumer Fraud and Deceptive Business Practices Act because the allegedly illegal conduct did not occur primarily and substantially in Illinois.

**E.     Declaratory and injunctive relief (Count 4)**

"A justiciable actual controversy exists only when a private right of action is available."  *Mellott v. Sprague*, 334 F. Supp. 3d 916, 922–23 (C.D. Ill. 2017) (citing

*Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("the Declaratory Judgments Act is not an independent source of federal jurisdiction, the availability of such relief presupposes the existence of a judicially remedial right""")).  PHI's declaratory judgment and injunctive relief claim thus cannot survive without any underlying claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss plaintiff's first amended complaint [dkt. no. 28].  Unless PHI files, by August 26, 2026, a motion to amend attaching a proposed second amended complaint including at least one viable claim over which the Court has jurisdiction, the Court will enter judgment against it.  The case is set for a telephonic status hearing on September 2, 2026 at 9:00 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date:  August 5, 2026

_____
MATTHEW F. KENNELLY
United States District Judge